FILED

2006 Oct-30  AM 11:42
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION


GREGORY TERRY,                          )
                                        )
                 Plaintiff,             )
                                        )
vs.                                     )
                                        )   Civil Action Number
THE GUARDIAN LIFE INSURANCE             )   **5:06-cv-1082-UWC**
COMPANY OF AMERICA,                     )
                                        )
                 Defendant.             )


## MEMORANDUM OPINION


In this case arising under the Employee Retirement Income Security Act, 29 U.S.C. § 1132 ("ERISA"), Plaintiff Gregory Terry claims that his disability benefits were unlawfully terminated by Defendant The Guardian Life Insurance Company of America ("the Guardian"). The Guardian denies the claim, and asserts a counterclaim for overpayments to the Plaintiff.

On consideration of the evidence adduced at trial as reflected in the undisputed facts which follow, the Court concludes that the Plaintiff has failed to carry his burden of proof, and that the Guardian has proved its counterclaim.

The Facts

In the mid-1980s, the Plaintiff was employed by the Nichols Research Corporation ("Nichols"). While so employed, the Plaintiff was covered by Guardian Plan # LTD 219762 ("the Plan"), which provides long term income disability benefits to qualified claimants.

To be entitled to continued disability benefits under the Plan, a claimant must be and remain "totally disabled." Within the first twenty-four months of disability, a claimant must be totally unable to perform the material duties of his regular occupation due to sickness or injury.  Following the first two years of disability, a claimant must be totally unable to perform the material duties of any suitable occupation.[1]

---

[1]The Plan provides:

From the start of a continuous disability through the first 24 months we pay benefits. "total disability" means an employee is totally unable to perform the material duties of his regular occupation due to sickness or injury. When benefits have been paid for 24 months, the meaning changes. And, for the duration of that disability, it means the employee is totally unable to perform the material duties of any suitable occupation. ....

**Medical Care Required:** While we pay benefits, we require a totally disabled employee to be under a doctor's care for the cause of his disability, unless the disability is due to (a) legal blindness; or (b) permanent loss of any two hands, or feet, cut off above the wrist or ankle joints. ....

**Rehabilitative Work:** With our written approval, a totally disabled employee may take rehabilitative work while he gets benefits from this plan. He can do such work for up to 24 months in any one period of totally disability. But we reduce the employee's net monthly benefit by 50% of his current earnings for such work.

Plaintiff  first  qualified for benefits under the Plan on December 14, 1987.[2]

He also began receiving social security benefits based on the Social Security

Administration("SSA")'s determination that he was disabled to perform any job in

the national economy.

Plaintiff received disability benefits from the Guardian from 1988 until

December 12, 2002.  Benefits were restored effective November 4, 2004, under a

reservation of rights while the Guardian undertook an investigation of Plaintiff's

claim for continuing disability benefits. Benefits were finally denied on March 17,

2006.

In 1999, the SSA terminated Plaintiff's disability benefits, and they have not

since been reinstated.

Beginning in August 1999 and continuing until he was laid off in 2002,

Plaintiff was employed by Raytheon Corporation at an annual salary of $80,000.

Plaintiff did not inform the Guardian of this employment.

Plaintiff has never sought the Guardian's approval for rehabilitative work, and

---

....
**Other Work:** A totally disabled employee can not work for wages or profit, except for rehabilitative work, after this plan has paid benefits for 24 months.

Doc. 19, Guardian Long Term Disability Insurance Plan, pp. 29, 31.

[2] Although Nichols terminated the Plan in 1995, the termination did not affect Plan participants who were already receiving benefits under it..

the Guardian has never given such approval.

Between November 4, 2004, and March 2006, the Guardian made monthly disability payments to Plaintiff in the amount of $2889, totaling $43,335.00

## Conclusion

Guardian's decision to terminate Plaintiff's disability benefits was not erroneous.  The Court reaches this conclusion based on its *de novo* review of the record and Plaintiff's trial testimony. The Plaintiff's full-time employment for three years, unbeknownst to the Guardian, while simultaneously collecting disability benefits, clearly ran afoul of the Plan.

On its counterclaim for overpayments, the Guardian has proved through Plaintiff's testimony that it is entitled to $43,335.00.

By separate order, judgment will be entered against the Plaintiff and in favor of the Guardian in the said amount.

Done the 30th day of October, 2006.

_____
U.W. Clemon
Chief United States District Judge